**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF CABLE NEWS NETWORK, INC. TO UNSEAL COURT RECORDS | Misc. Case No.: 1:26-mc-00152-CKK |

**DECLARATION OF NICHOLAS J. LEWIN**

I, Nicholas J. Lewin, hereby declare, pursuant to 28 U.S.C. § 1746, that:

1. I am a partner at KKL LLP, as well as counsel for Respondent Daniel Richman in this action. As such, I am familiar with the facts and circumstances set forth herein.

2. I respectfully submit this declaration in support of the Response of Respondent Daniel Richman to the Government's Opposition to Cable News Network, Inc.'s Application to Unseal Court Records.

3. On the afternoon of Thursday, August 27, 2026, a Miami-based FBI agent ("MF") contacted counsel for Professor Richman to arrange service of a subpoena seeking Professor Richman's testimony before a grand jury in Fort Pierce, Florida on September 10, 2026 (the "Subpoena").

4. On August 28, 2026, counsel agreed to accept service of the Subpoena on behalf of Professor Richman and, just after noon, FBI Agent MF confirmed counsel's acceptance of the Subpoena. *See also* Ex. A.

5. On August 28, 2026, less than one hour after confirmed acceptance of the Subpoena, Agent MF called counsel and, without any explanation, said that he wanted to arrange for in-person service of Professor Richman.

6. On August 28, 2026, shortly after Agent MF called counsel, and without notice to counsel, Agent MF called Professor Richman directly.

7. On the morning of Sunday, August 30, 2026, a second FBI agent, this one based in New York ("JR"), called Professor Richman directly; she left a message saying, *inter alia*: "I would like to speak with you."

8. On Sunday, August 30, 2026, hours following the call from the second FBI agent to Professor Richman, a third FBI agent ("RJ") left a voicemail for Professor Richman's counsel, saying that he wanted to "clarify some details in terms of conversations you've had with some of my colleagues over the last few days."

9. On August 30, 2026, in a call between counsel and Agent RJ, shortly after FBI Agent RJ's message to counsel, described immediately above, Agent RJ said that his "chain of command" had "directed" that the FBI serve Professor Richman in person, and he threatened that FBI agents would wait outside Professor Richman's personal residence until personal service was effected. Counsel reiterated that the Subpoena had already been served and that attempts to contact Professor Richman directly were flatly improper.

10. On August 30, 2026, Agent RJ and at least one other agent came to Professor Richman's building and told the building staff that they had "instructions to deliver something to someone" in Professor Richman's apartment. Professor Richman was out of town at the time. A building staff member told the agents to contact Professor Richman's lawyer, in response to which the agents asserted that they already had done so. The building staff member said that the agents could not go upstairs to the non-public spaces within the cooperative building to gain direct access to Professor Richman's apartment. One of the agents responded that they were "under instructions that if people don't let us up, they're going to be charged with obstruction." After further

discussion between the agents and a building staff member, the agents eventually agreed to let the staff member confirm that Professor Richman was not home, which he did, whereupon the agents departed.

11. On August 31, 2026, counsel left a message for Joseph diGenova, who was then in charge of the government's grand conspiracy investigation.

12. On September 1, 2026, counsel spoke with Mr. diGenova. In response to counsel reiterating that service of the Subpoena was accomplished days earlier and that FBI Agent MF had confirmed counsel's acceptance of service, Mr. diGenova said that was "not good enough." Mr. diGenova then asserted that "[t]he grand jury requested that we serve [Professor Richman] personally." When counsel observed that there was no discernable basis for Mr. diGenova's assertion that "[t]he grand jury requested that we serve [Professor Richman] personally," Mr. diGenova responded that "this is the first I'm hearing of the FBI saying that you could accept service of process on [Professor Richman's] behalf." Counsel asked Mr. diGenova for Professor Richman's status in the investigation; Mr. diGenova responded that Professor Richman is "definitely a target." When counsel inquired why Professor Richman had not been served with a target letter, as required by DOJ policy, Mr. diGenova first stated that his "team is in the process of getting onboarded and we're discussing things like that"; he then stated, "in my mind, [Professor Richman] is definitely a target, but not in the grand jury's mind; in their mind, he's a subject." Mr. diGenova said that his office was going to immunize Professor Richman via letter immunity, which would, he assured, be provided before testimony. When counsel asked whether the prosecution team had received DOJ approval to subpoena a lawyer; Mr. diGenova said that they had not.

13. On September 2, 2026, counsel spoke with a prosecutor on Mr. diGenova's team ("PH"). PH disagreed with Mr. diGenova's assessment that Professor Richman may be a target,

stating that, in his own view, Professor Richman was "obviously" a subject, although he opined that there was some conduct that "could be in the realm of criminality." PH reiterated that Professor Richman would receive letter immunity before he testified. In response to counsel's assertion that letter immunity might not be sufficient and Professor Richman might insist on statutory immunity, and thus to confirm that any such letter be provided sufficiently in advance of testimony, PH said that Professor Richman "can make an appearance, even if he invokes." When counsel observed that DOJ policy narrowly circumscribes the circumstances in which a witness who intends to invoke should nonetheless be required to appear, PH reiterated the government's intention to secure immunity prior to testimony—likely one week later, on September 8, 2026. PH claimed that Mr. diGenova was incorrect when he told counsel that prosecutors did not get the requisite internal approval to subpoena a lawyer.

14. On September 8, 2026, and September 9, 2026, counsel for Professor Richman followed up with PH about letter immunity, reminding him that Professor Richman needed to see the letter in advance of his testimony so that he could determine whether he would require statutory immunity.

15. On September 9, 2026, Professor Richman's counsel had a third conversation with the government regarding Professor Richman's status, this time with a third prosecutor ("ME"). ME represented that Professor Richman was "originally a target" but was not so any longer. ME stated that a proposed immunity letter would be sent to counsel imminently, and that he believed, if necessary, that the government would be prepared to offer statutory immunity. ME stated that he was not bringing Professor Richman to Florida to have him invoke and acknowledged that it would be improper for the government to do so.

16. The government did not send its proposed letter immunity agreement until 3:37 pm on September 9, 2026, the day before Professor Richman was scheduled to testify at 10:00 am in Fort Pierce.

17. On September 9, 2026, less than two hours after the government sent counsel its immunity letter, Professor Richman's counsel informed the government that Professor Richman would invoke absent statutory immunity.

18. Still obligated to appear on September 10, 2026 and having been advised that the government would endeavor to secure statutory immunity in advance of his testimony, Professor Richman and his counsel traveled from New York to Florida on September 9, 2026.

19. Despite prior representations, the prosecution team ultimately did not receive DOJ approval to move for statutory immunity for Professor Richman.

20. On September 10, 2026, Professor Richman appeared, as ordered, but, after waiting for hours, exercised his Fifth Amendment privilege.

21. On September 9, 2026, the day before Professor Richman's testimony, a government prosecutor advised Professor Richman's counsel that the government's attempt at "service" of the Subpoena was one of the issues the grand jury was investigating.

22. On September 10, 2026, while in the grand jury waiting room in the federal courthouse in Fort Pierce, two employees of Professor Richman's residential building staff were also present having themselves received subpoenas to provide grand jury testimony.

23. I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated: November 13, 2026
New York, NY

Respectfully submitted,

Nicholas J. Lewin (*pro hac vice* forthcoming)
KKL LLP
350 Fifth Avenue, 77th Floor
New York, NY 10118
Tel.: (212) 390-9559
Nick.Lewin@KKLllp.com

*Attorney for Respondent Daniel Richman*